IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT COLUMBIA

NICHOLAS ELLIOT ALOYO )
 ) Case No. 1:23-cv-00051
v. )
DR. KILOLO KIJAKAZI, Acting )
**Commission of the Social Security** )
**Administration** )

To: The Honorable Eli J. Richardson, District Judge

## REPORT AND RECOMMENDATION

Plaintiff Nicholas Elliot Aloyo filed this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("SSA") denying him disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"). The case is currently pending on Plaintiff's motion for judgment on the administrative record (Docket No. 8),[1] to which Defendant SSA has responded (Docket No. 11). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b) for initial consideration and a report and recommendation. (Docket No. 12.)

Upon review of the administrative record as a whole and consideration of the parties' filings, the undersigned Magistrate Judge respectfully recommends that Plaintiff's motion (Docket No. 8) be **DENIED**.

---

[1] Plaintiff titles his motion as a "motion for judgment on the pleadings." (Docket No. 8.) However, the Court considers this motion as one for judgment based on the administrative record, as set forth in Rule 5 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g).

## I. INTRODUCTION

On March 4, 2021, Plaintiff filed an application for DIB. (Transcript of the Administrative Record (Docket No. 6) at 195–201).[2] He asserted that, as of the alleged onset date of September 30, 2009,[3] he was disabled and unable to work due to "cerebral palsy; scoliosis; glaucoma; asbury hypertension; ADD; sleep apnea; Aspergers [sic]." (AR 95.) The claims were denied initially on May 20, 2021 and upon reconsideration on January 24, 2022. (AR 11.) On July 13, 2022, Plaintiff appeared with an attorney representative and testified at a video hearing conducted by ALJ Michael E. Finnie. (AR 37–58.) On August 3, 2022, the ALJ denied the claim. (AR 11–18.) On June 22, 2023, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the ALJ's decision the final decision of the SSA. (AR 1–4.) Plaintiff then timely commenced this civil action, over which the Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. THE ALJ'S FINDINGS

The ALJ included the following enumerated findings in the August 3, 2022 unfavorable decision:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2009.

2. The claimant did not engage in substantial gainful activity as of the amended alleged onset date of September 30, 2009, which is the date last insured (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following medically determinable impairments: scoliosis post surgery, bursitis, cerebral palsy, and glaucoma (20 CFR 404.1521 *et seq*.).

---

[2] The Transcript of the Administrative Record is hereinafter referenced by the abbreviation "AR" followed by the corresponding Bates-stamped number(s) in large black print in the bottom right corner of each page.

[3] Plaintiff originally alleged an onset date of April 29, 1986. However, upon advice of his representative, he amended the alleged onset date to September 30, 2009. (AR 12.)

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.*).

5. The claimant was not under a disability, as defined in the Social Security Act, at any time from the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(c)).

(AR 14–17.)

## III. REVIEW OF THE RECORD

The parties and the ALJ, in combination, have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## IV. DISCUSSIONS AND CONCLUSIONS OF LAW

### A. Standard of Review

The determination of disability under the Act is an administrative decision. The only questions before this Court upon judicial review are: (1) whether the SSA's decision is supported by substantial evidence, and (2) whether the proper legal criteria were applied to the SSA's decision. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)). The SSA's decision must be affirmed if it is supported by substantial evidence, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley,* 581 F.3d at 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.

3

2007); *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976) (quoting Sixth Circuit opinions adopting language substantially like that in *Richardson*).

The SSA utilizes a five-step sequential evaluation process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id*. First, if the claimant is engaged in substantial gainful activity, he is not disabled. *Id.* Second, if the claimant does not have a severe medically determinable impairment that meets the 12-month durational requirements, he is not disabled. *Id.* Third, if the claimant suffers from a listed impairment, or its equivalent, for the proper duration, he is presumed disabled. *Id.* Fourth, if the claimant can perform relevant past work based on his residual functional capacity ("RFC"), which is an assessment of "the most you [the claimant] can still do despite your limitations," 20 C.F.R. § 404.1545(a)(1), he is not disabled. *Id.* Fifth, if the claimant can adjust to other work based on his RFC, age, education, and work experience, he is not disabled. *Id.* The claimant bears the burden of proof through the first four steps, while the burden shifts to the SSA at step five. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

The Court's review of the SSA's decision is limited to the record made in the administrative hearing process. *Jones v. Sec'y of Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). A reviewing court may not try a case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984).

B.  **The ALJ's Five-Step Evaluation of Plaintiff**

In the instant case, the ALJ resolved Plaintiff's claim at step two of the five-step process. The ALJ found that Plaintiff met the first step and had not engaged in substantial gainful activity as of the amended alleged onset date. (AR 14.) However, at the second step, the ALJ determined that Plaintiff's impairments of "scoliosis post surgery, bursitis, cerebral palsy, and glaucoma" were severe, but that Plaintiff did not have an impairment or combination of impairments that both significantly limited his ability to perform basic work-related activities and met the twelve-month durational requirement. (AR 14–17.) Accordingly, the ALJ did not proceed to step three to determine the medical severity of Plaintiff's impairments; to step four to determine Plaintiff's RFC; or to step five to determine if Plaintiff could adjust to other work based on his RFC. The ALJ concluded that Plaintiff was not under a disability at any time from September 30, 2009, the alleged onset date, through August 3, 2022, the date of the decision. (AR 17.)

C.  **Plaintiff's Assertions of Error**

Plaintiff sets forth three assertions of error: (1) the ALJ failed to develop the record; (2) the ALJ's RFC determination was not supported by the evidence; and (3) the ALJ failed to conduct a proper credibility determination. (Docket No. 9 at 10–21.) Accordingly, Plaintiff requests that this case be remanded for further consideration under sentence four of 42 U.S.C. § 405(g), which allows a district court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

If the case contains an adequate record, "the [SSA's] decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Hudson-Kane v. Berryhill*, 247 F. Supp. 3d 908, 914 (M.D. Tenn. 2017) (quoting *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985)). However, benefits may be awarded immediately "only if all

5

essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Holtman v. Saul*, 441 F. Supp. 3d 586, 609 (M.D. Tenn. 2020) (quoting *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). The Court now turns to Plaintiff's assertions of error.

1. **The ALJ's Development of the Record**

As an initial matter, the Court clarifies that the ALJ did not undertake an analysis of Plaintiff's disability under steps three, four, or five of the sequential evaluation process because the ALJ determined at step two that Plaintiff did not have a severe medically determinable impairment that met the 12-month durational requirement. (AR 14–17.) At step two, an impairment is considered "severe" only if it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). An impairment is not "severe" if it is only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience." *Farris v. Sec'y of Health & Human Svcs.*, 773 F.2d 85, 90 (6th Cir. 1985) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)).

Step two is considered "a de minimis hurdle that a claimant clears unless the impairment is only a slight abnormality that minimally affects work ability." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (internal citation and quotations omitted). Nevertheless, it is the claimant's burden to prove both that his impairment significantly limited his work-related activities and that his impairment lasted for a continuous period of at least 12 months. *Harley v. Comm'r of Soc. Sec.*, 485 F. App'x 802, 803 (6th Cir. 2012).

Importantly, Plaintiff's date last insured is September 30, 2009 (AR 14), so Plaintiff can only establish his entitlement to benefits if he proves that he became "disabled" prior to this date.

*Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990) (citing 42 U.S.C. §§ 423(a), (c)). It is the claimant's burden to produce evidence demonstrating that his disability began before the date last insured. *Seeley v. Comm'r of Soc. Sec.*, 600 F. App'x 387, 390 (6th Cir. 2015).

For his first assertion of error, Plaintiff argues that the ALJ failed to develop the record because there was insufficient medical evidence to determine whether Plaintiff was disabled. Accordingly, Plaintiff contends that the ALJ should have obtained opinion evidence and, specifically, should have ordered a consultative examination. To support his position, Plaintiff relies primarily on two cases: (1) *Timothy R.J. v. Comm'r of Soc. Sec.*, No. 3:22-cv-216, 2023 WL 2258524 (S.D. Ohio Feb. 28, 2023); and (2) *Deskin v. Comm'r of Soc. Sec.*, 605 F.Supp.2d 908, 912 (N.D. Ohio 2008). As a threshold matter, both of these cases were decided by sister courts, so their holdings are not binding on this Court, although they are persuasive. Nevertheless, for the reasons explained below, the Court finds that neither case is applicable.

As an initial matter, both cases focus on a later step in the sequential analysis. They examined whether substantial evidence supported the ALJ's determinations at *step four* regarding the claimants' residual functional capacities. *Timothy R.J.*, 2023 WL 225824 at *3 ("An ALJ is required to base his RFC determination on a medical opinion."); *Deskin*, 605 F.Supp.2d at 910–11 ("This case raises the question of when an ALJ should decide a case in the absence of a medical opinion of a treating physician, consulting examiner, or medical expert as to the claimant's functional capacity."). Here, however, the question is whether substantial evidence supports the ALJ's determination at *step two* that Plaintiff did not have a severe medically determinable impairment that met the 12-month durational requirement. Accordingly, the legal propositions within these two cases are of minimal relevance.

Nevertheless, even if the analyses in *Timothy R.J.* and *Deskin* were applicable, the holdings in these cases would not necessitate reversal of the ALJ's finding that Plaintiff is not disabled. First, in *Timothy R.J.*, the court found that the ALJ erred when he failed to further develop the record by obtaining updated opinion evidence. 2023 WL 2258524 at *2. The court stated that an ALJ must obtain opinion evidence in at least two circumstances: (1) "when an ALJ is required to make medical judgments about a claimant's functional abilities by interpreting raw medical data"; and (2) when "a critical body of the objective medical evidence is not accounted for by a medical opinion and there is significant evidence of potentially disabling conditions." *Id.* at *3 (internal quotations omitted) (citing *Gonzalez v. Comm'r of Soc. Sec.*, No. 3:21-cv-000093-CEH, 2022 WL 824145, at *8 (N.D. Ohio Mar. 18, 2022); *Mascaro v. Colvin*, No. 1:16CV0436, 2016 WL 7383796, at *11 (N.D. Ohio Dec. 1, 2016)). Ultimately, the court found that the second circumstance was applicable and that "at least four years of medical evidence . . . was made part of the record but never reviewed by a medical source. Consequently no medical source evaluated the bulk of the records." *Id.* Accordingly, the ALJ in *Timothy R.J.* failed to adequately develop the record to support his conclusions regarding that claimant's RFC.

In *Deskin*, the court examined when an ALJ can and cannot render its own judgment about a claimant's RFC. 605 F.Supp.2d at 911–12. Where "the medical evidence shows relatively little physical impairment," the ALJ may render "a commonsense judgment" about the claimant's RFC, even without a physician's assessment. *Id.* at 912 (citing *Manso–Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)). In other words, a "functional capacity assessment from a medical source may not be necessary in every case." *Id.* However, such an assessment is necessary "[w]hen a claimant has sufficiently placed his or her functional inability at issue." *Id.* (citing *Manso-Pizarro*, 76 F.3d at 17). Therefore, as a "general rule," an ALJ must do one of three

8

things when there is no opinion from a medical source about the claimant's functional limitations: "recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing." *Id.*

However, as this Court has previously noted in other opinions, the *Deskin* case has been criticized by other courts as being overly broad. *See Johnson v. Saul*, No. 1:18-0041, 2019 WL 3647058, at *4 (M.D. Tenn. July 19, 2019) (citing *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010)). This Court previously summarized these criticisms as follows:

> In fact, the author of the *Deskin* case clarified in a subsequent opinion that *Deskin* "sets out a narrow rule that does not constitute a bright-line test" and "potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-cv-25, 2011 WL 5024866, at *2 (N.D. Ohio Oct. 21, 2011). Moreover, it is well-established that while an ALJ has the discretion to facilitate a consultative examination, she is not obligated to do so. See 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests.") (emphasis added). The ALJ retains the same discretion when deciding whether to re-contact a treating physician. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 n.3 (6th Cir. 2009) ("[A]n ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status[.]").
>
> Nevertheless . . . there is an abundance of case law from this circuit suggesting that an ALJ must generally obtain a medical expert opinion before including functional limitations in the RFC unless the ALJ can "render a commonsense judgment about functional capacity" based on evidence that "shows relatively little" impairment. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828 (E.D. Mich. 2017) (collecting cases). Such guidance is consistent with the Sixth Circuit's admonition that an ALJ "must not succumb to the temptation to play doctor and make [her] own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

*Johnson*, 2019 WL 3647058 at *4.

Here, Plaintiff has presented no compelling arguments under either *Timothy R.J.* or *Deskin* to show that the ALJ's decision at step two was not supported by substantial evidence. First and foremost, as detailed above, these cases are inapplicable to this matter because the ALJ did not get to step four to "make[] a finding of work-related limitations." *Id.* In addition, there is no evidence that the ALJ either (1) interpreted "raw medical data" to make medical judgments about Plaintiff's functional abilities or (2) failed to account for a "critical body of evidence" such that the ALJ was required to obtain opinion evidence per *Timothy R.J.* Finally, Plaintiff has failed to convincingly argue that the medical evidence in the record showed anything other than "relatively little physical impairment" such that the ALJ was required to obtain a functional capacity assessment from a medical source per *Deskin* and the subsequent cases that have clarified *Deskin*.

Regardless, the Court finds that the ALJ adequately developed Plaintiff's record because he examined and discussed Plaintiff's physical and mental impairments, Plaintiff's medical treatment, the prior administrative medical findings, and Plaintiff's education and work history. When reviewing evidence in a case, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). Rather, the ALJ must "articulate with specificity reasons for the findings and conclusions that he or she makes." *Reagan v. Colvin*, 47 F. Supp. 3d 648, 653 (E.D. Tenn. 2014) (quoting *Bailey v. Comm'r of Soc. Sec.*, No. 90-3061, 1999 WL 96920, at *4 (6th Cir. Feb. 2, 1999.) Nevertheless, an ALJ "may not ignore an entire line of evidence that is contrary to the ruling." *Craig v. Colvin*, No. 3:12–cv–00333, 2014 WL 1287178, at *12 (M.D. Tenn. Mar. 28, 2014) (quoting *McCombs v. Barnhart*, 106 F. App'x 480, 484 (7th Cir. 2004) (citation omitted)).

Here, the ALJ provided an adequate and fulsome discussion of the record with respect to Plaintiff's physical and mental impairments, as well as Plaintiff's treatment. For example, the ALJ discussed an x-ray from May 1998 that showed two Harrington rods and hooks, as well as mild residual mid-thoracic scoliosis but no evidence of spondylolisthesis. (AR 16 (citing AR 441).) He also discussed an examination from December 1999 wherein Plaintiff's provider noted Plaintiff's complaints of back and right hip pain; observed no obvious limp, no abductor weakness, and full range of motion; and provided exercises to alleviate Plaintiff's symptoms. (*Id.* (citing AR 440).) A review of the medical records in the administrative record show various x rays and examinations related to Plaintiff's back, but these records date from February 1992 to December 1999. (AR 439–53.) There are no medical records in the administrative record after December 1999 (AR 439–40) and before May 2011 (AR 503).[4] In other words, no medical records exist for the years 2000 to 2010. Accordingly, there are few medical records contained within the administrative record that speak to whether Plaintiff became disabled prior to his date last insured of September 30, 2009.

The ALJ found that medical records dated after the date last insured of September 30, 2009 show worsening or new impairments, including sleep apnea, hypertension, obesity, and glaucoma, but these conditions are immaterial to the period at issue. (AR 17.) The ALJ did not, therefore, take these conditions into account when determining Plaintiff's disability at step two.

The ALJ also considered the State agency consultants' determinations, but these provided "insufficient evidence" to evaluate Plaintiff's functional criteria prior to the date last insured of September 30, 2009. (AR 17.) In a May 20, 2021 medical evaluation, Dr. Richard Surrusco and

---

[4] From a review of the administrative record, the Court understands that Plaintiff was incarcerated from 2006 to 2011 and again from 2014 to 2021. (AR 14, 17, 651.) Neither party directly addresses the effect that Plaintiff's incarceration may have had on his disability status, though the SSA does assert that, following his incarceration, Plaintiff was "laid off" from employment for a reason other than his impairments. (Docket No. 11 at 13.)

11

Dr. Richard J. Milan, Jr. found that there was insufficient evidence to fully assess Plaintiff's physical or mental impairments. (AR 98–100.) In a January 20, 2022 medical evaluation, Dr. OK Yung Chung and Dr. Jeffrey Binder found the same as their counterparts the prior year. (AR 106–108.) Accordingly, the ALJ found that these determinations were neither valuable nor persuasive to determine Plaintiff's disability at step two. (AR 17.)

Finally, the ALJ provided an adequate discussion of Plaintiff's education and work history. With respect to Plaintiff's education, the ALJ reviewed the education records that Plaintiff submitted and considered his testimony, which the ALJ summarized as follows:

> The claimant testified that he was in special education from kindergarten and throughout high school. During a 2022 mental evaluation, the claimant reported he received a special education diploma. (Exhibit 12F, p3) The evidence from Williamson County Schools shows the claimant did receive some special education predominantly for math. (Exhibit 1F) However, the evidence from Franklin High School shows the claimant graduated with a regular high school diploma (Technical Path) on May 29, 1998. He was ranked number 137 of 305 students and had a grade point average (GPA) of 2.95. (Ex 1E, p4)

(AR 16.) As for Plaintiff's work experience, the ALJ reviewed a work history report showing that Plaintiff worked at McDonald's as a station manager from August 1, 2003 until September 30, 2005 for forty hours per week and earned $1,179.00 per month through September 2005 (AR 17); testimony from Plaintiff's mother that he "could not work at McDonalds now due to worsening gout, sleep apnea, hypertension, and glaucoma since 2009" (AR 16); and a mental evaluation report suggesting that Plaintiff did not work "prior to a conviction," while convicted and in prison, or "subsequent to [a] period of incarceration" (AR 17).

In sum, Plaintiff fails to meet his burden to (1) prove both that his impairment significantly limited his work-related activities and that his impairment lasted for a continuous period of at least 12 months, *Harley*, 485 F. App'x at 803, and (2) demonstrate that the ALJ's step two finding lacks the support of substantial evidence, *see Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir.

2012) (citing *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). For these reasons, the Court rejects Plaintiff's first assertion of error.

### 2. The ALJ's Determination of Plaintiff's RFC

In his second assertion of error, Plaintiff argues that the ALJ's determination of his RFC was not supported by the evidence in the record. Plaintiff contends that the ALJ improperly omitted mental and postural limitations from his RFC and failed to undertake a function-by-function assessment of his ability to perform work activities.

However, as detailed above, the ALJ was not required to determine Plaintiff's RFC at step four of the sequential evaluation process because the ALJ determined at step two that Plaintiff did not have a severe medically determinable impairment that met the 12-month durational requirement. (AR 14–17.) If the issue of disability can be resolved at any point during the evaluation, the ALJ does not proceed to the next step and the claim is not reviewed further. 20 C.F.R. § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step."). Accordingly, because the ALJ was under no obligation to go to any steps beyond step two, Plaintiff's arguments that the ALJ incorrectly determined Plaintiff's RFC have no merit. For these reasons, the Court rejects Plaintiff's second assertion of error.

### 3. The ALJ's Credibility Determination

For his third and final assertion of error, Plaintiff argues that the ALJ failed to conduct a "proper credibility determination." (Docket No. 9 at 19–21.) In particular, Plaintiff alleges that the ALJ failed to "find that the intensity, persistence, and limiting effects of his symptoms precluded him from engaging in substantial gainful activity on a full-time and sustained basis." (*Id.* at 19.)

To support this position, Plaintiff points to Social Security Ruling ("SSR") 16-3p and claims that the ALJ failed to abide by the two-step process set forth in this ruling.

"An individual's statements as to pain or other symptoms will not alone establish that [he is] disabled." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (internal citation omitted). Rather, when an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process.[5] SSR 16-3p, 2017 WL 5180304, at *2. First, the ALJ considers whether there is an underlying medically determinable impairment that could reasonably be expected to produce an individual's symptoms. *Id.* at *3. Second, if an impairment is established, the ALJ must then determine the intensity and persistence of the symptoms and the extent to which the symptoms limit an individual's ability to perform work-related activities. *Id.*

In considering the intensity, persistence, and limiting effects of symptoms, the ALJ must examine the "entire case record," which includes objective medical evidence, the individual's own statements, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. The ALJ must also consider the following factors: (1) daily activities; (2) the location, duration, frequency, and intensity of the alleged pain or other symptoms; (3) any precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication; (5) the claimant's non-medication treatment; (6) any measures other than treatment the claimant employs to relieve pain or other symptoms; and (7) "other evidence." *Id.* at *7–8.

The consistency of an individual's statement about the intensity, persistence, and limiting effects of symptoms is also important. If an individual's statements are *consistent* with the objective medical evidence, it is *more* likely that those symptoms have reduced the capacity to

---

[5] A "symptom" is defined as an individual's own description or statement of her impairment. SSR 16-3p, 2017 WL 5180304, at *2.

perform work-related activities. *Id.* at *8. On the other hand, if those statements are *inconsistent*, it is *less* likely that those symptoms have reduced the capacity to perform work-related activities. *Id.* Consistency is determined by reviewing an individual's statements when seeking disability benefits, statements at other times, and attempts to seek and follow medical treatment. *Id.* at *8–9. An analysis of treatment history may include a consideration of an individual's ability to afford treatment, access to low-cost medical services, and/or relief from over-the-counter medications, among other information. *Id.* at *9.

The ALJ's determination must contain specific reasons for the weight given to the individual's symptoms that are clearly articulated so that the individual and the subsequent reviewer can assess how the ALJ evaluated the individual's symptoms. *Id.* at *10. However, the Sixth Circuit has held that an ALJ's credibility determination is "essentially unchallengeable" and must be affirmed so long as the findings are "reasonable and supported by substantial evidence." *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 476 (6th Cir. 2016). *See also Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (courts must accord "great weight and deference" to an ALJ's determination regarding the consistency of a claimant's allegations); *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005) (claimants seeking to overturn the ALJ's decision still "face an uphill battle").

The Court finds that substantial evidence supports the ALJ's credibility determination in this matter. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("[A]n ALJ's assessment of a claimant's credibility must be supported by substantial evidence.") (citation omitted). In the decision, the ALJ first determined that Plaintiff's medically determinable impairments could be expected to produce some, but not all, of Plaintiff's alleged symptoms. The ALJ then found that Plaintiff's allegations concerning his impairments and his ability to work were

15

not "sufficiently supported by the record as a whole." (AR 16.) To support this finding, the ALJ referred to "the medical findings, the medical history and degree of medical treatment required, and the claimant's description of his activities of daily living." (*Id.*) In particular, the ALJ considered Plaintiff's testimony regarding his glaucoma, back disorder, and difficulty with math; his testimony regarding his daily activities, including cooking and taking out the trash; his mother's testimony regarding his daily activities; medical records regarding his pain; and the recommended treatment for that pain. (AR 15–17.)

As detailed above, the ALJ examined Plaintiff's medical records and treatment history prior to his date last insured of September 30, 2009, but very few records from this time period were in the record. The most recent pre-2009 records are from Plaintiff's December 9, 1999 visit to a pediatric orthopedic clinic for evaluation of right hip pain following Plaintiff's "posterior spinal fusion for idiopathic scoliosis." (AR 440.) In one record, Dr. Richard Heller reviewed imaging, observed two Harrington rods, hooks, and "minimal residual scoliosis," and noted that there was no spondylolisthesis. (AR 439.) In another record, Dr. Gregory Mencio noted that an examination of Plaintiff indicated that Plaintiff's recent hip pain was due to a trochanteric bursitis that may have been caused and exacerbated by prolonged standing during Plaintiff's job at a movie theater. (AR 440.) Dr. Mencio recommended a treatment program to alleviate the hip pain, but noted that Plaintiff seemed to be doing well otherwise. (*Id.*). It appears that the next set of medical records come after Plaintiff's date last insured. They are dated May 2011 when Plaintiff was no longer incarcerated and visited the Tennessee Department of Health. (AR 502–03.)

In sum, the ALJ relied on specific evidence to support his conclusion that Plaintiff's subjective complaints were not entirely consistent with the record, including Plaintiff's testimony, prior work history, medical records, and daily activities. Given such support, as well as the dearth

16

Case 1:23-cv-00051   Document 13   Filed 03/26/24   Page 16 of 17 PageID #: 774

not "sufficiently supported by the record as a whole." (AR 16.) To support this finding, the ALJ referred to "the medical findings, the medical history and degree of medical treatment required, and the claimant's description of his activities of daily living." (*Id.*) In particular, the ALJ considered Plaintiff's testimony regarding his glaucoma, back disorder, and difficulty with math; his testimony regarding his daily activities, including cooking and taking out the trash; his mother's testimony regarding his daily activities; medical records regarding his pain; and the recommended treatment for that pain. (AR 15–17.)

As detailed above, the ALJ examined Plaintiff's medical records and treatment history prior to his date last insured of September 30, 2009, but very few records from this time period were in the record. The most recent pre-2009 records are from Plaintiff's December 9, 1999 visit to a pediatric orthopedic clinic for evaluation of right hip pain following Plaintiff's "posterior spinal fusion for idiopathic scoliosis." (AR 440.) In one record, Dr. Richard Heller reviewed imaging, observed two Harrington rods, hooks, and "minimal residual scoliosis," and noted that there was no spondylolisthesis. (AR 439.) In another record, Dr. Gregory Mencio noted that an examination of Plaintiff indicated that Plaintiff's recent hip pain was due to a trochanteric bursitis that may have been caused and exacerbated by prolonged standing during Plaintiff's job at a movie theater. (AR 440.) Dr. Mencio recommended a treatment program to alleviate the hip pain, but noted that Plaintiff seemed to be doing well otherwise. (*Id.*). It appears that the next set of medical records come after Plaintiff's date last insured. They are dated May 2011 when Plaintiff was no longer incarcerated and visited the Tennessee Department of Health. (AR 502–03.)

In sum, the ALJ relied on specific evidence to support his conclusion that Plaintiff's subjective complaints were not entirely consistent with the record, including Plaintiff's testimony, prior work history, medical records, and daily activities. Given such support, as well as the dearth

16

Case 1:23-cv-00051   Document 13   Filed 03/26/24   Page 16 of 17 PageID #: 774

of record evidence prior to Plaintiff's date last insured and the significant deference that must be afforded the ALJ's credibility determination, *see Hernandez*, 644 F. App'x at 476, the Court finds no reversible error in the ALJ's finding. Accordingly, the Court rejects Plaintiff's third assertion of error.

## V. RECOMMENDATION

For the above stated reasons, it is respectfully **RECOMMENDED** that Plaintiff's motion for judgment on the administrative record (Docket No. 8) be **DENIED** and the SSA's decision be **AFFIRMED**.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this Report and Recommendation and must state with particularity the specific portions of this Report and Recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(a). Failure to file specific written objections within the specified time can be deemed to be a waiver of the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Milton*, 380 F.3d 909, 912 (6th Cir. 2004) (*en banc*). Any responses to objections to this Report and Recommendation must be filed within fourteen (14) days of the filing of the objections. *See* Fed. R. Civ. P. 72(b)(2); Local Rule 72.02(b).

Respectfully submitted,

_____
BARBARA D. HOLMES
United States Magistrate Judge